**WO**                                                                                                                              JDN

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Richard Johnson,<br><br>            Plaintiff,<br><br>vs.<br><br>Sergeant Juvera, et al.,<br><br>            Defendants. | No. CV 12-0539-PHX-GMS (DKD)<br><br>**ORDER**<br><br>**AND**<br><br>**ORDER TO SHOW CAUSE** |

Plaintiff Richard Johnson brought this civil rights action under 42 U.S.C. § 1983 against multiple Arizona Department of Corrections (ADC) employees (Doc. 1). Before the Court are three Motions for Summary Judgment filed by four of the Defendants (Docs. 118, 127, 130).

The Court will grant all three motions. The Court will also issue an Order to Show Cause to Plaintiff directing him to show cause why the remaining Defendant, Correctional Officer (CO) II Lemuel Jackson, should not be dismissed for failure to serve.

**I.     Background**

Plaintiff's claim arose during his confinement at the Arizona State Prison Complex-Lewis, Rast Unit (Doc. 1 at 1). He named the following Defendants: (1) Sergeant Manual Juvera; (2) CO II Jackson; (3) CO II Davis Cruz; (4) CO II Larry Brown; and (5) CO II Mark Reed (id. at 1A-2A).

In his Complaint, Plaintiff alleged that Juvera and Jackson were deliberately

indifferent to a substantial risk of harm when they allowed inmates to pass through a metal detector without any patdown after setting off the alarm (id. at 5). Plaintiff averred that the inmate who sounded the alarm on June 16, 2010, stabbed Plaintiff later that day (id.).

Plaintiff alleged that Cruz and Brown were deliberately indifferent when they allowed inmates from different units, who were to be kept separate and on lock down, to be out in the recreation yard (id. at 5-5A). Plaintiff further alleged that Reed was deliberately indifferent when, as the tower officer, he was inattentive to his duties and permitted inmates onto the yard although they were to be separated and locked in their cells (id. at 5A).

Plaintiff contends that, as a result of Defendants' actions and inactions, on June 16, 2010, he was stabbed by an inmate who triggered the metal detector but was permitted to pass through without an additional search. Plaintiff states that his injuries required a dozen staples to close his upper chest and the area below his left arm pit (id. at 5-5C).[1]

Defendants have filed three separate Motions for Summary Judgment: (1) Brown's Motion for Summary Judgment (Doc. 118), joined by Cruz (Doc. 125); (2) Juvera's Motion for Summary Judgement (Doc. 127); and (3) Reed's Motion for Summary Judgment (Doc. 130).[2]

**II.     Governing Standards**

    **A.     Summary Judgment**

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, that it believes demonstrate the absence

---

[1] Plaintiff's allegations are set forth in Count III of his Complaint (Doc. 1 at 5). On screening, the Court dismissed Counts I and II (Doc. 5).

[2] After each summary judgment motion was filed, the Court issued Notices required under Rand v. Rowland, 154 F.3d 952, 962 (9th Cir. 1998) (en banc), which informed Plaintiff of the requirements under Federal Rule of Civil Procedure 56 and the Local Rules governing summary judgment (Docs. 120, 129, 133).

1  of a genuine issue of material fact. Celotex, 477 U.S. at 323.

2  If the movant fails to carry its initial burden of production, the nonmovant need not
3  produce anything. Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc., 210 F.3d 1099,
4  1102-03 (9th Cir. 2000). But if the movant meets its initial responsibility, the burden shifts
5  to the nonmovant to demonstrate the existence of a factual dispute and that the fact in
6  contention is material, i.e., a fact that might affect the outcome of the suit under the
7  governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury
8  could return a verdict for the nonmovant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242,
9  248, 250 (1986); see Triton Energy Corp. v. Square D. Co., 68 F.3d 1216, 1221 (9th Cir.
10 1995). The nonmovant need not establish a material issue of fact conclusively in its favor,
11 First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968); however, it must
12 "come forward with specific facts showing that there is a genuine issue for trial." Matsushita
13 Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal citation
14 omitted); see Fed. R. Civ. P. 56(c)(1).

15 At summary judgment, the judge's function is not to weigh the evidence and
16 determine the truth but to determine whether there is a genuine issue for trial. Anderson, 477
17 U.S. at 249. In its analysis, the court must believe the nonmovant's evidence, and draw all
18 inferences in the nonmovant's favor. Id. at 255. The court need consider only the cited
19 materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3).

20 **B.     Eighth Amendment**

21 Under the Eighth Amendment, "prison officials have a duty . . . to protect prisoners
22 from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833
23 (1994). But "not . . . every injury suffered by one prisoner at the hands of another . . .
24 translates into constitutional liability for prison officials responsible for the victim's safety."
25 Id. at 834. A prison official violates the Eighth Amendment in failing to protect one inmate
26 from another only when two conditions are met. First, the alleged constitutional deprivation
27 must be, objectively, "sufficiently serious;" the official's act or omission must result in the
28 denial of "the minimal civilized measure of life's necessities." Id. Second, the prison

1  official must have a "sufficiently culpable state of mind," i.e., he must act with deliberate
2  indifference to inmate health or safety. Id. To demonstrate that a prison official was
3  deliberately indifferent to the threat of serious harm or injury by another prisoner, a plaintiff
4  must show that the "the official [knew] of and disregard[ed] an excessive risk to inmate . . .
5  safety; the official must both be aware of facts from which the inference could be drawn that
6  a substantial risk of serious harm exists, and [the official] must also draw the inference." Id.
7  at 837; Gibson v. County of Washoe, 290 F.3d 1175, 1187-88 (9th Cir. 2002). To prove that
8  officials knew of the risk, however, the prisoner may rely on circumstantial evidence; in fact,
9  the very obviousness of the risk may be sufficient to establish knowledge. See Farmer, 511
10 U.S. at 842; Wallis v. Baldwin, 70 F.3d 1074, 1077 (9th Cir. 1995).

11    In addition, prison officials who actually knew of a substantial risk to inmate health
12 or safety may be found free from liability if they responded reasonably to the risk, even if the
13 harm ultimately was not averted. A prison official's duty under the Eighth Amendment is
14 to ensure "'reasonable safety.'" Farmer, 511 U.S. at 844 (internal citations omitted).

15 **III.    Brown and Cruz's Motion for Summary Judgment**
16    **A.    Facts**
17    As stated, Plaintiff's claim against Cruz and Brown is that they were deliberately
18 indifferent when they allowed inmates from different units, who were to be kept separate and
19 on lock down, to be out in the recreation yard (Doc. 1 at 5-5A).

20    In support of their summary judgment briefing, the parties each submit a separate
21 Statement of Facts (Doc. 119, Brown's Statement of Facts (BSOF); Doc. 126, Cruz's
22 Statement of Facts (CSOF); Doc. 135, Pl.'s Statement of Facts (resp. to BSOF) (PSOF1);
23 Doc. 146, Pl.'s Statement of Facts (resp. to CSOF) (PSOF2)). They set forth the following
24 relevant disputed and undisputed facts:

25    On June 16, 2010, Brown was on duty at the prison chow hall and was responsible for
26 releasing a group of inmates to the recreational area after each group finished eating (BSOF
27 ¶ 2; PSOF1 ¶ 2). Once a group of inmates arrives in the recreation area, a signal is normally
28 made by the guards in the recreation area that it is clear to release another group of inmates

1  to proceed to the chow hall (id.)  From his post inside the chow hall, Brown was not charged
2  with giving or receiving the signal to release the next group of inmates (id.).  That same day,
3  Cruz was assigned to the Secondary Yard Set on the Rast Unit (CSOF ¶ 2; Doc. 126, Tab 1,
4  Cruz Aff. ¶ 4; PSOF2 ¶ 2).  Cruz attests that in this role, he was not responsible for and was
5  not able to control inmate movement in and out of cells nor was he involved in the release
6  or escort of the inmates involved in the June 16, 2010 incident (Doc. 126, Tab 1, Cruz Aff.
7  ¶ 15).  According to an ADC report of the incident, Cruz's position is responsible for
8  movement of inmates and ensuring that they get to meals, education, or medical and that the
9  yard is running smoothly (PSOF2 ¶¶ 44, 59; Doc. 146, Ex. P (Doc. 146-1 at 38)).

10        There is no dispute that on June 16, 2010, a fight broke out between Plaintiff, inmate
11 Albert Tsosie, and inmate Marlon McCowan in the area between the chow hall and recreation
12 area (BSOF ¶ 4; PSOF1 ¶ 4).  Tsosie died as a result of the assault, and McCowan and
13 Plaintiff were charged with murdering Tsosie (BSOF ¶¶ 6, 12; PSOF1 ¶¶ 6, 12).  Plaintiff
14 pled guilty to soliciting McCowan to murder Tsosie (BSOF ¶ 15; PSOF1 ¶ 15).

15        Brown states that on June 16, 2010, he was waiting for another group of inmates to
16 proceed into the chow hall when he saw two inmates, Plaintiff and McCowan, running away
17 from the chow hall building towards the recreational area (BSOF ¶ 3).  Brown saw other
18 officers moving towards the altercation so he took charge of moving the inmates who were
19 outside the chow hall inside the building so that they did not join in the fray (BSOF ¶ 9;
20 PSOF1 ¶ 9).

21        Cruz states that he was returning from a water break when he saw Tsosie standing by
22 the recreation yard gate (CSOF ¶ 4).  Cruz states that as he started to unlock the recreation
23 yard gate, he saw McCowan and Plaintiff jump the metal railing by the chow hall line and
24 run towards Cruz and Tsosie (id. ¶¶ 4-5).  Cruz states that Tsosie then ran towards McCowan
25 and Plaintiff (id. ¶ 6). Cruz states that he ordered Tsosie, McCowan, and Plaintiff to stop but
26 his orders were ignored (id. ¶ 7).  Cruz states that he saw the three inmates engage in a fight
27 and Plaintiff hold Tsosie's arms behind his back while McCowan stabbed Tsosie (id. ¶ 8).
28 Cruz then used chemical spray on the inmates to attempt to cease the altercation (id. ¶ 9;

- 5 -

PSOF2 ¶ 9). Correctional officers arrived to assist in separating the inmates and breaking up the altercation (CSOF ¶ 10; PSOF2 ¶ 10).

Plaintiff states that he was waiting to enter the chow hall for lunch when he turned and saw Tsosie hopping like a boxer and looking at Plaintiff; Tsosie then broke into a run towards Plaintiff with a weapon in his hand (PSOF2 ¶¶ 19-25). Plaintiff states that he never jumped a metal railing and did not run towards Tsosie, nor did he ever hear any orders or commands from Cruz or anyone else (id. ¶¶ 5, 7). Plaintiff remembers Tsosie swinging the weapon at him repeatedly, and Plaintiff grabbed his hand to maintain control (id. ¶ 26). Plaintiff states that he was sprayed by chemical spray, was blinded by the spray, and continued to hang on to Tsosie (id. ¶¶ 27-28). Plaintiff states that he was then separated from Tsosie and attended to by medical staff (id. ¶ 29).

**B.   Analysis**

Brown and Cruz move for summary judgment on the grounds that (1) they were not the cause of Plaintiff's injuries, (2) there was an intervening cause that supersedes their liability for the subsequent events, and (3) Plaintiff failed to state an Eighth Amendment claim (Docs. 118, 125).[3]

The record shows that Plaintiff pled guilty to solicitation to commit second-degree murder and that at the plea hearing, he confirmed that on June 16, 2010, he solicited McGowan to murder Tsosie (Doc. 119, Ex. D, Change of Plea Hr'g Tr. 7:19-8:14, Aug. 17, 2012). Plaintiff argues that the plea he entered was for manslaughter, which includes committing second degree murder upon a sudden quarrel resulting from adequate provocations or committing second degree murder while being coerced to do so by use or threatened use of deadly physical force, and he asserts that an alleged "plan to murder Tsosie on the day in question is specious and unsupported" (Doc. 134 at 8; Doc. 145 at 8). The

---

[3] In his separate reply in support of the summary judgment motion, Cruz argues that Plaintiff is judicially estopped from bringing his § 1983 claim (Doc. 153 at 1-4). The Court will not address this argument raised only in the reply. See United States v. Wright, 215 F.3d 1020, 1030 n. 3 (9th Cir. 2000) (declining to consider an argument raised for the first time in reply brief).

- 6 -

Defendants correctly point out that Plaintiff is bound by his plea agreement and deposition testimony, which includes Plaintiff's concessions that he and McCowan charged towards Tsosie and that Plaintiff held Tsosie's arms as McCowan stabbed him (Doc. 141 at 5, citing Doc. 128, Ex. 2, Pl. Dep. 76:19-77:8, March 29, 2013; Doc. 119, BSOF ¶ 7[4] & Ex. C, Pl. Dep. 71:1-7; Doc. 153 at 5). See United States v. Shapiro, 879 F.2d 468, 470-71 (9th Cir. 1989) (stipulations voluntarily entered into are binding and enforceable). The Court will not consider Plaintiff's summary judgment assertions that contradict his prior deposition testimony and plea agreement. See Kennedy v. Allied Mut. Ins. Co., 952 F.2d 262, 266 (9th Cir. 1991) ("party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony").

Accordingly, the factual record shows that Plaintiff solicited Tsosie's murder, ran towards Tsosie on the yard, and held his arms as McCowan stabbed him. The Court agrees with Brown and Cruz that under these facts, they were not the cause of Plaintiff's injuries and, therefore, cannot be liable under § 1983 for failure to protect (see Doc. 118 at 6-7, citing Encarnacion v. Dann, 80 F. App'x 140, 142 (2d Cir. Nov. 7, 2003) (unpublished) (finding that the plaintiff's injuries stemmed from his affirmative act of murdering another prisoner rather than from the defendants' alleged failure to protect him from that prisoner)). See Clark v. Johnson, 181 F. App'x 606, 607-08 (7th Cir. 2006) (unpublished) ("the risk to [the plaintiff] was of his own making, and prison officials cannot reasonably be required to protect an inmate who intentionally instigates a violent altercation with another prisoner"); Indreland v. Yellowstone Cnty. Bd. of Comm'rs, 693 F. Supp. 2d 1230, 1236, 1243 (D. Mont. 2010) (the plaintiff's failure-to-protect claim fails as matter of law where the plaintiff was the initiator in altercation with his cell mate).

Even if the Court ignores those facts stemming from the plea agreement and

---

[4]Plaintiff objects to Brown's use of his deposition testimony under Federal Rule of Civil Procedure 30(e)(1) because Brown used the deposition before 30 days had passed in which Plaintiff was permitted to review the transcript and make corrections (PSOF1 ¶ 7). Plaintiff's objection is overruled because Brown proffered a copy of the transcript with Plaintiff's corrections and no changes or corrections were made to that portion of the deposition relied on in BSOF ¶ 7 (Doc. 141, Ex. A).

deposition testimony, Plaintiff fails to satisfy the second prong of the deliberate indifference analysis. He maintains that Defendants were the cause of his injuries because they were deliberately indifferent to the risk of substantial harm evidenced by (1) the yard consisting of two groups of Native Americans who were known to be different Security Threat Groups (STGs) hostile to each other and housed in separate buildings and (2) instructions from supervisors to keep the two groups separate from one another due to security concerns (Doc. 134 at 6; Doc. 145 at 5; Doc. 135, PSOF1 ¶ 19; Doc. 146, PSOF2 ¶¶ 18, 47-48, 50-53). Plaintiff further contends that Defendants did not act consistent with their duties; he alleges they were responsible for but failed to ensure security on the yard during inmate movements (Doc. 134 at 2, 6; Doc. 145 at 2, 6; Doc. 146, PSOF2 ¶ 44 & Ex. P). In the ADC Supplemental Report Staff Interview of Brown, Brown stated that he and Cruz were assigned as chow-hall security on June 16, 2010, and that "errors were made in the movement of inmates which allowed the incident to occur" (Doc. 146, Ex. D). Specifically, between the feedings of inmates in Buildings 1 and 2, Defendants fed the inmate work crews who were on the recreation field. While the inmate work crews were still eating, Building 1 inmates were released to the chow hall. Consequently, when the inmate work crews returned to the recreation field, they crossed paths with the Building 1 inmates on their way into the chow hall (Doc. 146, Ex. D). The Supplemental Report also states that Tsosie should not have been on the recreation yard at the relevant time because he was not on a work crew (id.).

Both Brown and Cruz proffer sworn statements that they had no knowledge of why the fight broke out, whether any of the inmates involved were able to pass through detectors with a weapon, whether any of them were affiliated with an STG, or whether any of them should have been in lock down or assigned to a work crew (Doc. 119, Ex. A, Brown Decl. ¶¶ 7-10; Doc. 126, Tab 1, Cruz Aff. ¶¶ 17-20). Plaintiff does not present any evidence that Defendants were aware of any particular threats between Plaintiff and Tsosie or that Defendants knew Plaintiff had solicited McCowan to kill Tsosie. Although McCowan and Tsosie were allegedly members of rival STGs (Doc. 146, PSOF2 ¶ 36), the record shows that Plaintiff was not an STG member or a member of any particular group of prisoners who

might be susceptible to attack (Doc. 119, Ex. C, Pl. Dep. 52:2-4). Thus, as argued by Defendants, there was no obvious reason Plaintiff needed to be separated from Tsosie for eating, recreation, or housing and no reason Defendants would have anticipated that Plaintiff was subject to an excessive risk by being exposed to Tsosie (Doc. 141 at 10). See Farmer, 511 U.S. at 843 (noting that a plaintiff can establish exposure to a sufficiently serious risk of harm if he shows that he belongs to an identifiable group of prisoners likely to be attacked by other inmates); Foster v. Runnels, 554 F.3d 807, 814 (9th Cir. 2009) ("[i]f an inmate presents evidence of very obvious and blatant circumstances indicating that the prison officials knew the risk existed, then it is proper to infer that the official must have known [of the risk]") (quotation omitted).

In short, Plaintiff has not submitted any evidence that Brown or Cruz knew of and disregarded a substantial risk of serious harm to Plaintiff posed by Tsosie or, for that matter, McCowan, before the June 16, 2010 incident. See Berg v. Kincheloe, 794 F.2d 457, 459 (9th Cir.1986) (although the deliberate indifference standard "does not require that the guard or official believe to a moral certainty that one inmate intends to attack another at a given place at a time certain before that officer is obligated to take steps to prevent such an assault[,] . . . he must have more than a mere suspicion that an attack will occur") (internal quotation marks and citations omitted). To the extent that Brown and Cruz erred in allowing two groups of inmates to cross paths and were unaware that Tsosie should not have been on the yard, those mistakes do not amount to deliberate indifference. See Farmer, 511 U.S. at 835 ("deliberate indifference entails something more than mere negligence").

The Court therefore finds no genuine issue of material fact regarding whether Brown or Cruz knew of and disregarded a substantial risk of serious harm to Plaintiff. And, as discussed above, there is no genuine issue of material fact regarding whether Defendants were the proximate cause of Plaintiff's injuries sustained on June 16, 2010. Brown and Cruz's Motion for Summary Judgment will be granted on these grounds, and the other arguments raised by the parties need not be considered.

**IV.   Juvera's Motion for Summary Judgment**

### A.   Facts

In support of the briefing, the parties each submit a separate Statement of Facts (Doc. 128, Juvera's Statement of Facts (JSOF); Doc.159, Pl.'s Statement of Facts (PSOF3)). The claim against Juvera is limited to Plaintiff's allegation that on June 16, 2010, Juvera allowed inmates to continue through a metal detector after setting off the alarms and did not pat them down or recheck them and that one of these inmates was involved in the subsequent stabbing incident (JSOF ¶ 10; PSOF3 ¶ 10). Plaintiff claims that Juvera's conduct amounted to deliberate indifference to substantial risk of harm (Doc. 1).

In June 2010, the Rast Unit was a high-security-level yard (PSOF3 ¶ 31). Juvera asserts that he was not at the metal detector at the relevant time on June 16; he was covering for the education officer in a different area (JSOF ¶ 12; Doc. 127 at 7). Plaintiff disputes that Juvera was not at the metal detector at the relevant time (PSOF3 ¶ 12). On June 16, 2010, Plaintiff did not personally see Juvera clear any inmates through the metal detector, nor did he see McCowan or Tsosie pass through the metal detector (JSOF ¶ 11; PSOF3 ¶ 11). But Plaintiff relies on the Supplemental Report Staff Interview of CO II Jackson, which reports that there was an inmate—name redacted—with an ace wrap on his hand who "did not clear the scanner but was allowed to go to the dining hall anyway by Stg. Juvera" and that Jackson allowed the inmate "to go to chow without clearing the scanner as directed by Stg. Juvera" (Doc. 159, Ex. C). Another Supplemental Report documents that an inmate with an ace bandage on his right arm had difficulty clearing the metal detector but was not searched, and it was speculated that this is how an inmate—name redacted—concealed a weapon (id., Ex. P).

As set forth above, thereafter, a fight broke out between McCowan, Plaintiff, and Tsosie, and Plaintiff received a stab wound (JSOF ¶ 2 (in part); PSOF3 ¶¶ 2 (in part), 26, 29).

### B.   Analysis

Juvera moves for summary judgment on the grounds that Plaintiff fails to show that Juvera's acts caused a constitutional injury, Juvera was not deliberately indifferent to Plaintiff's rights, and Juvera is entitled to qualified immunity (Doc. 127).

The parties dispute whether Juvera was at the metal detector when at least one inmate set off the alarm but was permitted to pass through without further security checks. Juvera argues that the Supplemental Report on which Plaintiff relies is ambiguous and speculative because it does not include specific inmate names or dates and that the Report is inadmissible hearsay that cannot be used to create a question of fact (Doc. 160 at 3-4). The Supplement Report constitutes an ADC record of a regularly conducted activity and is therefore an exception to the hearsay rule. Fed. R. Evid. 803. As to any ambiguity in the Report, that stems from the redacted portions of the copy provided to Plaintiff, and Juvera could have provided an unredacted copy with his reply to prevent the Court from making any possible unwarranted inferences in Plaintiff's favor. Juvera also argues that the Report refers to an inmate failing to clear the scanner at the breakfast meal but the altercation occurred during the lunch meal (Doc. 160 at 3; Doc. 159, Ex. C). The Court finds that whether the alarm was sounded at breakfast or lunch, it is not dispositive of whether Juvera was at the metal detector and allowed an inmate involved in the altercation to proceed through the metal detector after setting off the alarm. Making all inferences in Plaintiff's favor, there is a material factual dispute whether Juvera was working at the metal detector and failed to do a further security check when an inmate, who was later involved in the altercation, set off the alarm.

Plaintiff contends that Juvera's actions "set into motion" acts that caused Plaintiff's injury because Juvera knew or should have known that, given the verified hostilities between the two Native American groups on the yard, permitting inmates to pass through a metal detector without clearing them posed a substantial risk of serious harm (Doc. 158 at 5-6). But there is no evidence that Juvera's failure to do a further security check in this instance was anything more than oversight or negligence. As mentioned, negligence does not amount to deliberate indifference. See Farmer, 511 U.S. at 835.

More importantly, Plaintiff cannot show that Juvera's actions were the proximate cause of Plaintiff's injuries. As discussed above, the factual record shows that Plaintiff solicited McCowan to murder Tsosie, ran with McCowan towards Tsosie, and held Tsosie's arms as McCowan stabbed him. For the reasons discussed above with respect to Brown and

1  Cruz, these facts preclude a finding that Juvera's actions caused Plaintiff's injuries or
2  constituted a failure to protect. See Clark, 181 F. App'x at 607; Indreland, 693 F. Supp. 2d
3  at 1243.  Accordingly, Juvera's Motion for Summary Judgment will be granted, and the
4  Court need not address qualified immunity.

**V.     Reed's Motion for Summary Judgment**

   **A.     Facts**

As stated, Plaintiff alleges that Reed was deliberately indifferent when, as the tower officer, he permitted inmates onto the yard although they were to be separated and locked in their cells (Doc. 1 at 5A). In their separate Statements of Facts (Doc. 131, Reed's Statement of Facts (RSOF); Doc. 149, Pl.'s Statement of Facts (PSOF4)), the parties present the following facts:

On June 16, 2010, Reed was assigned to Tower Weapons/Tower Control on the Rast Unit (RSOF ¶ 3; PSOF4 ¶ 3). In this role, Reed was not responsible for and did not control inmate movement in and out of cells, and he was not involved in the release or escort of any inmates involved in the altercation (RSOF ¶ 13). Nor did Reed have any responsibility as to which inmates were in lockdown or assigned to work crews (id. ¶ 15). Reed, however, fails to indicate what any of his responsibilities were as Tower Weapons/Tower Control officer (see Doc. 148 at 12). An ADC Report Supplement documents that June 16, 2010 was Reed's first day assigned to the tower after a transfer from another unit the week before (Doc. 149, Ex. M).[5] Reed was unfamiliar with the operation of the unit's functions and unfamiliar with the inmates involved in the altercation (id., PSOF4 ¶ 57).

   **B.     Analysis**

Reed seeks summary judgment on the grounds that (1) Plaintiff's § 1983 claim is barred by Heck v. Humphrey, 512 U.S. 477 (1994); (2) Reed did not cause Plaintiff's injuries; (3) Plaintiff's denial of being an STG member requires dismissal; (4) Reed was not deliberately indifferent to Plaintiff's Eighth Amendment rights; (5) Reed is entitled to

---

[5]To the extent that Reed objects to this Report Supplement as inadmissible hearsay (Doc. 154 at 5), his objection is overruled. Fed. R. Evid. 803.

qualified immunity; and (6) Plaintiff's allegation that a failure to follow procedures allowed the altercation does not support a § 1983 claim (Doc. 130).

In his second, third, and fourth grounds for summary judgment, Reed presents arguments that he was not aware Plaintiff was a member of an STG or that there was any threat posed to Plaintiff and that Plaintiff's injuries were caused by his own involvement in the altercation (id. at 7-10). The same analysis applied to Brown and Cruz as to knowledge of a substantial risk of harm and proximate cause applies to Reed. Even if Reed was aware of the two Native American groups and that they were hostile STGs (see Doc. 148 at 6-7), Plaintiff presents no evidence that Reed knew of and disregarded a substantial risk of serious harm to Plaintiff posed by Tsosie or any other inmate on or before June 16, 2010. See Farmer, 511 U.S. at 834, 837. Further, Plaintiff's affirmative acts in soliciting murder and participating in the altercation that day preclude a finding that Reed's actions or failure to act caused Plaintiff's injuries or constituted a failure to protect. See Clark, 181 F. App'x at 607; Indreland, 693 F. Supp. 2d at 1243. Reed's Motion for Summary Judgment will therefore be granted, and the remaining arguments need not be addressed.

## VI. Order to Show Cause

Under Federal Rule of Civil Procedure 4(m), if a summons and complaint are not served upon a defendant within 120 days after filing, the court shall, after notice to the plaintiff, either dismiss the action or, if the plaintiff shows good cause for the failure, direct that service be effected within a specified time. See Walker v. Sumner, 14 F.3d 1415, 1421-22 (9th Cir. 1994).

Plaintiff named CO II Jackson as a Defendant and attempted to serve him but, on April 17, 2012, the summons was returned unexecuted because the Marshal could not effect service at the Lewis facility without a first name (Docs. 1, 7). On June 19, 2012, the Court ordered Defendants to provide Plaintiff with Jackson's first name, which they did, along with his address under seal; however, on July 23, 2012, the summons was again returned unexecuted because Jackson no long resided at the address provided (Docs. 14, 18, 20). Shortly thereafter, on August 14, 2012, Plaintiff moved to unseal Jackson's last-known

address so that he could attempt to locate a forwarding address from the post office (Doc. 23). The Court denied Plaintiff's motion based on security concerns (Doc. 25). The docket reflects no further activity with respect to Jackson. To date, Jackson has not been served, and more than 120 days have elapsed since the filing of the Complaint.

In accordance with the notice requirement in Rule 4(m), Plaintiff has 30 days from the date of this Order to show cause why Jackson should not be dismissed for failure to serve. Failure to respond to this Order to Show Cause will result in dismissal of Jackson.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is withdrawn as to Defendants' Motions for Summary Judgment (Docs. 118, 127, 130).

(2) Brown and Cruz's Motion for Summary Judgment (Doc. 118), Juvera's Motion for Summary Judgment (Doc. 127), and Reed's Motion for Summary Judgment (Doc. 130) are **granted**.

(3) Brown, Cruz, Juvera, and Reed are dismissed as Defendants.

(4) Within **30 days** from the date of this Order, Plaintiff must show cause why Jackson and the remaining claim against him should not be dismissed for failure to serve.

DATED this 22nd day of October, 2013.

*/s/ A. Murray Snow*
G. Murray Snow
United States District Judge